1   Jeffrey A. Koncius, State Bar No. 189803
     *koncius@kiesel.law*
2   Nicole Ramirez Jones, State Bar No. 279017
     *ramirez@kiesel.law*
3   **KIESEL LAW LLP**
     8648 Wilshire Boulevard
4   Beverly Hills, CA 90211-2910
     Tel: 310-854-4444
5   Fax: 310-854-0812

6

7             **UNITED STATES DISTRICT COURT**

8             **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNIFER MEDINA, individually and on behalf of all others similarly situated, | **Case No. 2:23-cv-6159** |
| | <u>CLASS ACTION</u> |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| VENTURA COUNTY CREDIT UNION, | |
| Defendant. | |

*(left margin, vertical text)* KIESEL LAW LLP — Attorneys at Law — Beverly Hills, California

Plaintiff Jennifer Medina ("Plaintiff") brings this Class Action Complaint, on behalf of herself and all others similarly situated (the "Class") against Defendant Ventura County Credit Union ("VCCU" or "Defendant") alleging as follows, based upon information and belief, investigation of counsel, and personal knowledge of Plaintiff.

## NATURE OF CASE

1.      Between October 20, 2022, and December 15, 2022, VCCU, a full-service financial institution[1], lost control over its computer network and the highly sensitive personal information of its current and former customers stored on that computer network in a data breach perpetrated by cybercriminals ("Data Breach"). On information and belief, the Data Breach has impacted 81,900 current and former customers.

2.      On information and belief, the Data Breach began on or around October 20, 2022, when cybercriminals first accessed Defendant's network, and was not discovered by Defendant until December 14, 2022, nearly two months after the Data Breach first occurred and at least a day before the Data Breach would cease. Following an internal investigation, Defendant learned cybercriminals gained unauthorized access to current and former customers' personally identifiable information ("PII"). Defendant struggled to identify what information was involved in the Data Breach and whom it belonged to until June 7, 2022, nearly six months later.

3.      On or around July 6, 2022– almost nine months after the Data Breach first began and seven months after Defendant first learned of the Data Breach – VCCU finally began notifying Class Members about the Data Breach ("Breach Notice"), an

---

[1] VCCU, https://www.vccuonline.net/About/About-Ventura-County-Credit-Union/About-Us (last visited July 19, 2023).

CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

example of which is attached as Exhibit A. However, Defendant has not completed notice and continues to notify breach victims.

4.      Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the PII of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the Class's PII—rendering them easy targets for cybercriminals.

5.      Defendant's Breach Notice obfuscated the nature of the breach and the threat it posted—refusing to tell its customers how many people were impacted, how the breach happened, or why it took the Defendant over half a year to begin notifying victims that cybercriminals had gained access to their highly private information.

6.      Defendant's failure to timely report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

7.      Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

8.      In failing to adequately protect customers' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed an unknown number of its current and former customers.

9.      Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cybersecurity measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their PII. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

10.     Plaintiff is a VCCU customer and Data Breach victim.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

11. The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

## PARTIES

12. Plaintiff Medina is a natural person and citizen of California, where she intends to remain.

13. Defendant, VCCU, is incorporated in California, with its principal place of business at 2575 Vista Del Mar Drive #100, Ventura, CA 93001. Defendant can be served through its registered agent Linda Rossi.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member and Defendant are citizens of different states.

15. This Court has personal jurisdiction over VCCU because it is a citizen in this District and maintains its headquarters and principal place of business in this District.

16. Venue is proper because VCCU maintains its headquarters and principal place of business in this District.

## FACTUAL BACKGROUND

### *VCCU*

17. VCCU touts itself as a full-service financial institution, with locations in Ventura, Port Hueneme, Oxnard, RiverPark, Camarillo, Thousand Oaks, Moorpark,

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

and Simi Valley, California.[2] It boasts over $1 billion in assets and over 75,000 members.[3]

18.    As part of its business, Defendant receives and maintains the PII of thousands of customers. In doing so, Defendant implicitly promises to safeguard their PII.

19.    In collecting and maintaining its customers' PII, Defendant agreed it would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

20.    Indeed, VCCU boasts in its privacy policy that "online safety and security is our top priority" and that "the latest technology safeguards your accounts."[4]

**Online safety and security is our top priority.**

The latest technology safeguards your accounts.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[2]    About us, VCCU, https://www.vccuonline.net/About/About-Ventura-County-Credit-Union/About-Us (last visited July 19, 2023).

[3] *Id.*

[4]    Online security, VCCU, https://www.vccuonline.net/Privacy-Security/Online-Security (last visited July 19, 2023).

CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

21.    Defendant assures its customers that because of its "ongoing efforts to employ the latest in Internet security technology," Defendant's "online banking is indeed safe"[5]:

> **How Secure Is Ventura County Credit Union's Online Banking?**    ⊖
>
> Ventura County Credit Union uses technology that encrypts or disguises all information during your Online Banking session. If someone were to intercept your data, it would be meaningless and impossible to read or change. Online Banking is indeed safe and is being used by a growing number of Internet users like you. Security has always been a concern when transmitting sensitive information across the Internet. Before financial institutions could make online services available, an infrastructure was designed to keep data safe while it was transmitted from a personal computer to an institution's server.

22.    Indeed, Defendant was so confident in its cybersecurity that it provided advice to its customers on the various way PII could be stolen including frauds and scams.

> **Tips to safeguard your accounts**
>
> Establish good habits now to help prevent and detect fraud, including:
>
> - **Avoid phishing attempts:** If you receive an unsolicited call, email, or text message from us asking for your personal information such as your Online/Mobile Banking login username or password, account numbers, SSN, one-time security passcode or PIN, it's a scam. Hang up immediately and call us at 805.477.4000.
> - **Stay ahead of the fraudsters** by knowing what scams are out there and how to spot a scam when you see one. Visit our Security Resource Center to learn more.
> - **Sign up for Consumer Alerts** to your inbox at consumer.ftc.gov.
> - **Review your account statements regularly** for any suspicious or unusual transactions.
> - **Check your credit report at least once per year** to catch signs of identity theft early. Get your free credit report at annualcreditreport.com.

23.    Despite recognizing its duty to do so, on information and belief, VCCU has not implemented reasonably adequate cybersecurity safeguards or policies to protect customer PII or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, VCCU leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to customers' PII.

---

[5] *Id.*

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

***The Data Breach***

24.    As a condition of receiving banking services from VCCU, Plaintiff provided it with her PII, including her name, Social Security number, and financial account information. VCCU used that PII to facilitate its banking services and the needs of Plaintiff and required Plaintiff to provide that PII to obtain its services.

25.    In collecting and maintaining PII, Defendant implicitly agreed that it will safeguard the data using reasonable means according to their internal policies, as well as state and federal law.

26.    According to the Breach Notice, VCCU claims to have "became aware of suspicious activity in certain employee email" on December 14, 2022. Ex. A. VCCU further admits that this unauthorized third party had gained undetected, remote access as early as October 20, 2022.

27.    In other words, the Data Breach investigation revealed that cybercriminals had unfettered access to VCCU's current and former customers' PII for an appalling fifty-five days before discovery and that Defendant's cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its customers' highly private information.

28.    On or about July 6, 2023–*nine* months after the Data Breach began and *seven* months after the Defendant first learned of the Data Breach – VCCU finally began notifying Plaintiff and Class Members about the Data Breach.

29.    Despite its duties and alleged commitments to safeguard PII, Defendant did not in fact follow industry standard practices in securing customers' PII, as evidenced by the Data Breach.

30.    In response to the Data Breach, VCCU contends that it has or will be "taking steps to implement additional safeguards and review policies and procedures relating to data privacy and security" Ex. A. Although Defendant fails to expand on

what these alleged "steps" and "additional safeguards" are, such enhancements should have been in place before the Data Breach.

31.  Through its Breach Notice, Defendant also recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "remain vigilant for incidents of identity theft and fraud" as well as to review "Steps You Can Take to Protect Personal Information." Ex. A.

32.  On information and belief, VCCU has offered several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the Data Breach involves PII that cannot be changed, such as Social Security numbers.

33.  Even with several months' worth of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

34.  Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages (explained in more detail below), which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

35.  On information and belief, VCCU failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its customers' PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice.***

36.  It is well known that PII, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

37.     In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[6]

38.     In light of recent high profile data breaches, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), VCCU knew or should have known that its electronic records would be targeted by cybercriminals.

39.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

40.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite their own acknowledgment of its duties to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

41.     In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks, including ransomware attacks involving data theft, because warnings were readily available and accessible via the internet.

42.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web

---

[6] Data breaches break record in 2021, CNET, https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/ (last accessed May 16, 2023).

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[7]

43.    In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[8]

44.    This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

45.    In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the PII of thousands of its current and former customers in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and Defendant's type of business had cause to be particularly on guard against such an attack.

46.    Before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

---

[7] Ransomware mentioned in 1,000+ SEC filings over the past year, ZDNet, https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed May 04, 2023).

[8] Ransomware Guide, U.S. CISA, https://www.cisa.gov/stopransomware/ransomware-guide (last accessed May 04, 2023).

*Plaintiff's Experience*

47.    Plaintiff Medina is a VCCU customer.

48.    As a condition of receiving banking services from VCCU, Plaintiff provided it with her PII, including her name, and Social Security number. VCCU used that PII to facilitate its banking services and the needs of Plaintiff and required Plaintiff to provide that PII to obtain its services.

49.    Plaintiff reasonably believed that a portion of the funds she paid to VCCU for banking services would be used to provide adequate cybersecurity to protect her PII.

50.    Plaintiff provided her PII to VCCU and trusted that the company would use reasonable measures to protect it according to VCCU's internal policies and state law.

51.    Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by failing to notify her about it for almost seven months after VCCU finally discovered the Data Brach (which had been going on for months by that time).

52.    Plaintiff suffered actual injury from the exposure of her PII —which violates her rights to privacy.

53.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

54.    Plaintiff does not recall ever learning that her PII was compromised in a data breach incident, other than the breach at issue in this case.

55.    As a result of the Data Breach and the recommendations of Defendant's Notice, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing her online account passwords,

placing a credit freeze through the three main credit bureaus, and monitoring her credit information as suggested by Defendant.

56.    Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from identity theft. Plaintiff fears for her personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

57.    Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's delay in informing Plaintiff and Class Members about the Data Breach.

58.    Indeed, Plaintiff has begun experiencing phishing emails, spam calls, and spam texts following the Data Breach, suggesting her PII is now in the hands of cybercriminals.

59.    Plaintiff has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

### Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft

60.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

61.    As a result of VCCU's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

a.    The loss of the opportunity to control how their PII is used;

12

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

b.      The diminution in value of their PII;

c.      The compromise and continuing publication of their PII;

d.      Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.      Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.      Delay in receipt of tax refund monies;

g.      Unauthorized use of stolen PII; and

h.      The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in their possession.

62.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

63.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

64.    Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

/ / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

65.    It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

66.    One such example of criminals using PII for profit is the development of "Fullz" packages.

67.    Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

68.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

69.    Defendant disclosed the PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and members of the proposed Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

70.    Defendant's failure to properly notify Plaintiff and the Class of the Data Breach exacerbated Plaintiff's and the Class's injuries by depriving them of the

1  earliest ability to take appropriate measures to protect their PII and take other

2  necessary steps to mitigate the harm caused by the Data Breach.

3              ***Defendant failed to adhere to FTC guidelines.***

4      71.    According to the Federal Trade Commission ("FTC"), the need for data

5  security should be factored into all business decision-making. To that end, the FTC

6  has issued numerous guidelines identifying best data security practices that

7  businesses, such as Defendant, should employ to protect against the unlawful

8  exposure of PII.

9      72.    In 2016, the FTC updated its publication, Protecting Personal

10 Information: A Guide for Business, which established guidelines for fundamental data

11 security principles and practices for business. The guidelines explain that businesses

12 should:

13          a.    protect the personal customer information that they keep;

14          b.    properly dispose of personal information that is no longer needed;

15          c.    encrypt information stored on computer networks;

16          d.    understand their network's vulnerabilities; and

17          e.    implement policies to correct security problems.

18     73.    The guidelines also recommend that businesses watch for large amounts

19 of data being transmitted from the system and have a response plan ready in the event

20 of a breach.

21     74.    The FTC recommends that companies not maintain information longer

22 than is needed for authorization of a transaction; limit access to sensitive data; require

23 complex passwords to be used on networks; use industry-tested methods for security;

24 monitor for suspicious activity on the network; and verify that third-party service

25 providers have implemented reasonable security measures.

26     75.    The FTC has brought enforcement actions against businesses for failing

27 to adequately and reasonably protect customer data, treating the failure to employ

28 reasonable and appropriate measures to protect against unauthorized access to

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

76.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

## CLASS DEFINITION AND ALLEGATIONS

77.     Plaintiff sues on behalf of herself and the proposed nationwide class ("Nationwide Class") and state subclass ("Subclass") (collectively, the "Classes"), defined as follows, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

**Nationwide Class:**

> All individuals residing in the United States whose PII was compromised in the VCCU Data Breach including all those who received notice of the Data Breach.

**California Subclass:**

> All individuals residing, or who have resided, in California whose PII was compromised in the VCCU Data Breach including all those who received notice of the Data Breach.

78.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

79.     Plaintiff reserves the right to amend the class definition.

80.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

81.     **Numerosity**. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

16

proposed Class includes approximately 81,900 individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's records.

82. **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a. whether Defendant engaged in the wrongful conduct alleged herein;

b. whether the alleged conduct constitutes violations of the laws asserted;

c. whether Defendant owed Plaintiff and the other Class Members a duty to adequately protect their PII;

d. whether Defendant breached its duty to protect the PII of Plaintiff and the other Class Members;

e. whether Defendant knew or should have known about the inadequacies of its data protection, storage, and security;

f. whether Defendant failed to use reasonable care and commercially reasonable methods to safeguard and protect Plaintiff's and the other Class Members' PII from unauthorized theft, release, or disclosure;

g. whether the proper data security measures, policies, procedures, and protocols were in place and operational within Defendant's computer systems and digital storage environment;

h. whether Defendant had the proper computer systems to safeguard and protect Plaintiff's and the other Class Members' PII from unauthorized theft, release or disclosure;

/ / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

i.    whether Defendant breached the promise to keep Plaintiff's and the Class Members' PII safe and to follow federal data security protocols;

j.    whether Defendant's conduct was the proximate cause of Plaintiff's and the other Class Members' injuries;

k.    whether Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

l.    whether Plaintiff and the other Class Members suffered ascertainable and cognizable injuries as a result of Defendant's conduct;

m.    whether Plaintiff and the other Class Members are entitled to recover actual damages and/or statutory damages; and,

n.    whether Plaintiff and the other Class Members are entitled to other appropriate remedies, including injunctive relief.

83.    Defendant engaged in a common course of conduct giving rise to the claims asserted by Plaintiff on behalf of herself and the other Class Members. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

84.    **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. All Class Members were subject to the Data Breach and had their PII accessed by and/or disclosed to unauthorized third parties. Defendant's misconduct impacted all Class Members in a similar manner.

85.    **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Members of the Class, has retained counsel experienced in complex consumer class action litigation, and intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

86.    **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial

18

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

detriment suffered by individual Class Members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class Members, on an individual basis, to obtain effective redress for the wrongs done to them. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts and would also increase the delay and expense to all parties and the courts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

87.   Plaintiff and Class Members are ascertainable because Defendant's records will identify all victims of Defendant's Data Breach.

88.   The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

89.   The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

/ / /

90.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

91.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

## FIRST CAUSE OF ACTION

### Negligence

### (On Behalf of Plaintiff and the Classes)

92.    Plaintiff restates and realleges all allegations above and hereafter as if fully set forth herein.

93.    Upon acquiring and gaining access to the PII of Plaintiff and Class Members, Defendant owed to Plaintiff and Class Members a common law duty of reasonable care in handling and using this information and securing and protecting the information from being stolen, accessed, and misused by unauthorized parties. Pursuant to this duty, Defendant was required to design, maintain, and test its security systems to ensure that these systems were reasonably secure and capable of protecting the PII of Plaintiff and Class Members. Defendant further owed to Plaintiff and Class Members a duty to implement systems and procedures that would detect a breach of its security systems in a timely manner and to timely act upon security alerts from such systems.

94.    Defendant owed this duty to Plaintiff and Class Members because Plaintiff and Class Members compose a well-defined, foreseeable, and probable class of individuals whom Defendant should have been aware could be injured by Defendant's inadequate security protocols. Defendant actively solicited Plaintiff's and Class Members' PII in exchange for its banking services. Attendant to Defendant's solicitation, use and storage, Defendant knew of its inadequate and unreasonable security practices with regard to its computer/server systems and also

20

knew that hackers and thieves routinely attempt to access, steal and misuse the PII that Defendant actively solicited from its customers. As such, Defendant knew a breach of its systems would cause damage to Plaintiff and the other Class Members.

95.    Defendant breached its duty to Plaintiff and Class Members by failing to implement and maintain security controls that were capable of adequately protecting the PII of Plaintiff and the other Class Members.

96.    Defendant also breached its duty to timely and accurately disclose to Plaintiff and Class Members that their PII had been or was reasonably believed to have been improperly accessed or stolen.

97.    Defendant's negligence in failing to exercise reasonable care in protecting the PII of Plaintiff and the other Class Members is further evidenced by Defendant's failure to comply with legal obligations and industry standards, and the delay between the date of the Data Breach and the time when the Data Breach was disclosed.

98.    Furthermore, Defendant was negligent for waiting months to notify Plaintiff and Class Members of the Data Breach.

99.    Additionally, Section 5 of the FTCA, 15 U.S.C. § 45, required Defendant to take reasonable measures to protect Plaintiff's and the Class Member's PII data and is a further source of Defendant's duty to Plaintiff and the Class Members. Section 5 prohibits unfair practices in or affecting commerce, including, as interpreted and enforced by the FTC, the unfair act or practice by businesses like Defendant of failing to implement and use reasonable measures to protect PII. Defendant, therefore, was required and obligated to take reasonable measures to protect PII it solicited, possessed, held, or otherwise used. The FTC publications and data security breach orders described herein further form the basis of Defendant's duty to adequately protect PII. By failing to implement and use reasonable data security measures, Defendant acted in violation of Section 5 of the FTCA.

/ / /

CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

100.   Defendant is obligated to perform its business operations in accordance with industry standards. Industry standards are another source of duty and obligations requiring Defendant to exercise reasonable care with respect to Plaintiff and the Class Members by implementing reasonable data security measures that do not create a foreseeable risk of harm to Plaintiff and the Class Members. Industry best practices put the onus of adequate cybersecurity on the entity most capable of preventing a Data Breach. In this case, Defendant was the only entity capable of adequately protecting the data that it alone solicited, collected, and stored.

101.   The injuries to Plaintiff and Class Members were reasonably foreseeable to Defendant because common law, statutes, and industry standards require Defendant to safeguard and protect its computer systems and employ procedures and controls to ensure that unauthorized third parties do not gain access to Plaintiff's and Class Members' PII.

102.   The injuries to Plaintiff and Class Members also were reasonably foreseeable because Defendant knew or should have known that systems used for safeguarding PII were inadequately secured and exposed PII to being breached, accessed, and stolen by hackers and unauthorized third parties. As such, Defendant's own misconduct created a foreseeable risk of harm to Plaintiff and Class Members.

103.   Defendant's failure to take reasonable steps to protect the PII of Plaintiff and Class Members was a proximate cause of their injuries because it directly allowed thieves easy access to Plaintiff's and Class Members' PII. This ease of access allowed thieves to steal PII of Plaintiff and Class Members, which could lead to dissemination in black markets.

104.   As a direct proximate result of Defendant's conduct, Plaintiff and Class Members have suffered theft of their PII. Defendant allowed thieves access to Plaintiff's and Class Members' PII, thereby decreasing the security of Plaintiff's and Class Members' financial and personal accounts, making Plaintiff's and Class Members' identities less secure and reliable, and subjecting Plaintiff's and Class

1  Members to the imminent threat of identity theft. Not only will Plaintiff and Class
2  Members have to incur time and money to re-secure their bank accounts and
3  identities, but they will also have to protect against identity theft for years to come.

4      105.    Defendant's conduct warrants moral blame because Defendant actively
5  solicited the PII of Plaintiff and Class Members without disclosing that its security
6  was inadequate and unable to protect the PII of Plaintiff and Class Members. Holding
7  Defendant accountable for its negligence will further the policies embodied in such
8  law by incentivizing IT service providers to properly secure sensitive consumer
9  information and protect the consumers who rely on these companies every day.

10     106.    As a direct and proximate result of Defendant's negligence, Plaintiff and
11 Class Members have been injured as described herein and throughout this Complaint,
12 and are entitled to damages, including compensatory, and punitive damages, in an
13 amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Negligence *Per Se*

### (On Behalf of Plaintiff and the Classes)

17     107.    Plaintiff restates and realleges all allegations above and hereafter as if
18 fully set forth herein.

19     108.    Pursuant to the FTCA, 15 U.S.C. § 45, Defendant had a duty to provide
20 fair and adequate computer systems and data security practices to safeguard Plaintiff's
21 and members of the Class's PII.

22     109.    Section 5 of the FTA prohibits "unfair . . . practices in or affecting
23 commerce," including, as interpreted and enforced by the FTC, the unfair act or
24 practice by businesses, such as Defendant, of failing to use reasonable measures to
25 protect consumers' PII. The FTC publications and orders promulgated pursuant to the
26 FTCA also form part of the basis of Defendant's duty to protect Plaintiff's and the
27 members of the Class's sensitive PII.
28 / / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

110.   Defendant violated its duty under Section 5 of the FTCA by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

111.   The harm that has occurred is the type of harm the FTCA is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

112.   Defendant had a duty to Plaintiff and the Class to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and the Class's PII.

113.   Defendant breached its respective duties to Plaintiff and members of the Class under the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class's PII.

114.   Defendant's violation of Section 5 of the FTCA and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

115.   But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

116.   The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

117. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and members of the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

**Invasion of Privacy**

**(On Behalf of Plaintiff and the Classes)**

118. Plaintiff restates and realleges all allegations above and hereafter as if fully set forth herein.

119. Plaintiff and the Class had a legitimate expectation of privacy regarding their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

120. Defendant owed a duty to Plaintiff and the Class to keep their PII confidential.

121. The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff's and the Class's PII is highly offensive to a reasonable person. Defendant's reckless and negligent failure to protect Plaintiff's and the Class's PII constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

122. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

123. Because Defendant failed to properly safeguard Plaintiff's and the Class's PII, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

124.   As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

125.   Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII is still maintained by Defendant with their inadequate cybersecurity system and policies.

126.   Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

127.   Plaintiff, on behalf of herself and Class Members, seeks injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' PII.

128.   Plaintiff, on behalf of herself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## FOURTH CAUSE OF ACTION

### Breach of Implied Contract

### (On Behalf of Plaintiff and the Classes)

129.   Plaintiff restates and realleges all allegations above and hereafter as if fully set forth herein.

130.   Defendant entered into various contracts with its customers to provide banking services to them.

131.   These contracts are virtually identical to each other and were made expressly for the benefit of Plaintiff and the Class, as it was their confidential PII that VCCU agreed to collect and protect through its services. Thus, the benefit of

26

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

collection and protection of the PII belonging to Plaintiff and the Class were the direct and primary objective of the contracting parties.

132.    Plaintiff and Class Members also conferred a monetary benefit on Defendant. Specifically, they purchased services from Defendant and/or its agents and in so doing provided Defendant or its agents with their PII. In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their PII protected with adequate data security.

133.    Defendant knew that if it were to breach these contracts with customers, the customers, including Plaintiff and the Class, would be harmed by, among other things, fraudulent misuse of their PII.

134.    VCCU breached its contracts with its customers when it failed to use reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiff's and Class Members' PII.

135.    As a reasonably foreseeable result of the breach, Plaintiff and the Class were harmed by VCCU's failure to use reasonable data security measures to store their PII, including but not limited to, the actual harm through the loss of their PII to cybercriminals.

136.    Accordingly, Plaintiff and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

# **FIFTH CAUSE OF ACTION**

## **Violation of California's Unfair Competition Law ("UCL")**

## **Unlawful Business Practice**

## **(Cal Bus. & Prof. Code § 17200, *et seq*.)**

## **(On Behalf of Plaintiff and the Nationwide Class or, alternatively, the California Subclass)**

137.   Plaintiff restates and realleges all allegations above and hereafter as if fully set forth herein.

138.   Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

139.   Defendant's conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq*. (the "CCPA"), and other state data security laws.

140.   Defendant stored the PII of Plaintiff and the Class in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiff's and the Class's PII secure so as to prevent the loss or misuse of that PII.

141.   Defendant failed to disclose to Plaintiff and the Class that their PII was not secure. However, Plaintiff and the Class were entitled to assume, and did assume, that Defendant had secured their PII. At no time were Plaintiff and the Class on notice that their PII was not secure, which Defendant had a duty to disclose.

142.   Defendant also violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and the Class's nonencrypted and nonredacted PII.

/ / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

143.   Had Defendant complied with these requirements, Plaintiff and the Class would not have suffered the damages related to the Data Breach.

144.   Defendant's conduct was unlawful, in that it violated the CCPA.

145.   Defendant's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Section 5(a) of the FTCA.

146.   Defendant's conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

147.   Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting PII.

148.   Defendant also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

149.   Instead, Defendant made the PII of Plaintiff and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiff and the Class to an impending risk of identity theft. Additionally, Defendant's conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraphs.

/ / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

150.    As a result of those unlawful and unfair business practices, Plaintiff and the Class suffered an injury-in-fact and have lost money or property.

151.    The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

152.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

153.    Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of Plaintiff and the Classes)

154.    Plaintiff restates and realleges all allegations above and hereafter as if fully set forth herein.

155.    Upon information and belief, Defendant funds its data security measures from its general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

156.    As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

157.    Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they purchased services from Defendant and/or its agents and in so doing provided Defendant or its agents with their PII. In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their PII protected with adequate data security.

158.    Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

159.    Plaintiff and Class Members conferred a monetary benefit on Defendant, by paying Defendant as part of Defendant rendering banking related services, a portion of which was to have been used for data security measures to secure Plaintiff's and Class Members' PII, and by providing Defendant with their valuable PII.

160.    Defendant was enriched by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to avoid the data security obligations at the expense of Plaintiff and the Class by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

161.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

162.    Defendant acquired the monetary benefit and PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

163.    If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant either directly or through their own financial institutions.

164.    Plaintiff and Class Members have no adequate remedy at law.

165.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity to control how their PII is used; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

CLASS ACTION COMPLAINT

prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

166.   As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm.

167.   Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

## SEVENTH CAUSE OF ACTION

### Violation of the California Consumer Records Act

### Cal. Civ. Code § 1798.80, *et seq*.

### (On Behalf of Plaintiff and the California Subclass)

168.   Plaintiff restates and realleges all allegations above and hereafter as if fully set forth herein.

169.   Plaintiff brings this Count on her own behalf and on behalf of the Subclass.

170.   Under California law, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." (Cal. Civ. Code § 1798.82.) The disclosure must "be made in the most expedient time possible and without unreasonable delay" (*Id.*), but "immediately following discovery [of the breach], if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." (Cal. Civ. Code § 1798.82, subd. b.)

171.    The Data Breach constitutes a "breach of the security system" of Defendant.

172.    An unauthorized person acquired the personal, unencrypted information of Plaintiff and the Subclass.

173.    Defendant knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiff and the Subclass, but waited approximately seven months to notify them. Seven months was an unreasonable delay under the circumstances.

174.    Defendant's unreasonable delay prevented Plaintiff and the Subclass from taking appropriate measures from protecting themselves against harm.

175.    Because Plaintiff and the Subclass were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

176.    Plaintiff and the Subclass are entitled to equitable relief and damages in an amount to be determined at trial.

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**EIGHTH CAUSE OF ACTION**

**Violation of the California Consumer Privacy Act**

**Cal. Civ. Code § 1798.150**

**(On Behalf of Plaintiff and the California Subclass)**

177.    Plaintiff restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

178.    Plaintiff brings this Count on her own behalf and on behalf of the Subclass.

179.    Defendant violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted PII of Plaintiff and the Class. As a direct and proximate result, Plaintiff's and the Class's nonencrypted and nonredacted PII was subject to unauthorized access and exfiltration, theft, or disclosure.

180.    Defendant is a business organized for the profit and financial benefit of its owners according to California Civil Code § 1798.140, that collects the personal information of its customers, and whose annual gross revenues exceed the threshold established by California Civil Code § 1798.140(d).

181.    Plaintiff and Class Members seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards its customers' PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold PII, including Plaintiff's and Class Members' PII. Plaintiff and Class Members have an interest in ensuring that their PII is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately safeguard this information.

182.    Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Defendant's registered service agents, detailing the specific provisions of the CCPA that Defendant has violated and continues to violate. If

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Defendant cannot cure within 30 days—and Plaintiff believes such cure is not possible under these facts and circumstances—then Plaintiff intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

183.    As described herein, an actual controversy has arisen and now exists as to whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

184.    A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, prays for relief as follows:

     a.    For an order certifying the Classes and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Class;

     b.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

     c.    For damages in an amount to be determined by the trier of fact;

     d.    For an order of restitution and all other forms of equitable monetary relief;

     e.    Declaratory and injunctive relief as described herein;

     f.    Awarding Plaintiff reasonable attorneys' fees, costs, and expenses as otherwise allowed by law;

     g.    Awarding pre- and post-judgment interest on any amounts awarded; and

/ / /

/ / /

/ / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

CLASS ACTION COMPLAINT

1          h.    Awarding such other and further relief as may be just and proper.

2    DATED:  July 28, 2023              **KIESEL LAW LLP**

3

4

5                                          By:      */s/ Nicole Ramirez Jones*

6                                                   Jeffrey A. Koncius
                                                    Nicole Ramirez Jones
7
                                                    Attorneys for Plaintiff
8                                                   JENNIFER MEDINA, individually and on
                                                    behalf of all others similarly situated
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff, individually and on behalf of the putative Class, demands a trial by

3    jury on all claims so triable.

4    DATED:  July 28, 2023              **KIESEL LAW LLP**

5

6

7                              By:    */s/ Nicole Ramirez Jones*

8                                     Jeffrey A. Koncius
                                      Nicole Ramirez Jones

9

10                                    Attorneys for Plaintiff
                                      JENNIFER MEDINA, individually and on

11                                    behalf of all others similarly situated

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

37